```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
INDIA.COM, INC.,                        :
                    Plaintiff,          :
                                        :       02 Civ. 111 (DLC)
        -v-                             :
                                        :       OPINION & ORDER
SANDEEP DALAL,                          :
                                        :
                    Defendant.          :
                                        :
----------------------------------------X
```

Appearances:

For Plaintiff India.com:
William Mueller
Matthew Schiappa
Clemente, Mueller & Tobia, P.A.
76 Beaver Street
New York, NY 10005

For Defendant:
Sandeep Dalal, pro se

DENISE COTE, District Judge:

On June 20, 2005, the United States Court of Appeals for the Second Circuit remanded this action for a factual determination of whether EasyLink breached its agreement to pay Sandeep Dalal ("Dalal") a commission on the sale of its subsidiary India.com, Inc. ("ICI") by terminating its agreement to make that sale for the purpose of avoiding paying Dalal a commission. India.com, Inc. v. Dalal, 412 F.3d 315, 317 (2d Cir. 2005). Following a conference with the Court, and pursuant to a December 13, 2005 Order, the parties were given an opportunity to submit proposed findings of fact and conclusions of law and memoranda of law addressed to the remanded issue. Based on the record created by the non-jury trial before this Court in December 2002, and having

considered the parties' recent submissions, the Court finds that Dalal did not prove that Easy Link terminated the agreement to sell ICI in order to avoid paying Dalal his commission, and enters judgment for EasyLink.

The facts established by the evidence received at trial were described in the bench Opinion issued on December 9, 2002 ("Opinion"), and it is incorporated by reference. Briefly, hit by the dot.com collapse and losing money steadily, EasyLink decided to sell ICI and other subsidiaries. EasyLink engaged Dalal to assist in finding a buyer for ICI, and executed three different engagement letters with him for that purpose. It is the third and last such letter that governed the relationship at the time at issue here ("Third Agreement"). Dalal found a buyer ("Buyer") for ICI.

As the negotiations for the sale were proceeding, EasyLink found it could no longer afford to pay all of ICI's expenses. Among other things, it defaulted on lease payments for ICI's office space and ICI had to vacate the space. ICI signed a settlement agreement with its landlord, agreeing to pay approximately $125,000 over the next several months. EasyLink also had difficulty paying both the Indian attorney who was assisting in the sale of ICI, and ICI's management and staff. EasyLink hoped to use money contributed by the Buyer to an escrow account to pay necessary expenses, as the escrow agreement acknowledged.

A definitive stock purchase agreement ("SPA") for the sale

of ICI was signed on October 26, 2001.  On that same day, Dalal and EasyLink signed the Third Agreement, which provided that Dalal would be paid 12.5% of the consideration paid by the Buyer.  Because EasyLink did not pay its Indian attorney, that attorney refused to act, and there was a delay in getting the necessary Indian government approvals for the sale.  Meanwhile, ICI's former landlord went to court when EasyLink failed to make the required payments under the settlement agreement.  That litigation presented additional hurdles for the sale of ICI since the landlord threatened injunctive relief to restrain the sale unless he was paid what he was owed.

During all of this time, the financial pressure on EasyLink from ICI's continued operations and debts mounted.  For example, due to a failure to pay creditors, the ICI website was shut down. EasyLink owed some of the ICI employees several months' salary. EasyLink was paying approximately $100,000 per month for ICI's operating expenses.  Then, the litigation with the landlord turned more ominous.  Based on news it received on December 11, EasyLink feared that the Indian court would soon learn that there was an imminent sale of a subsidiary that could be enjoined and that EasyLink's counsel had been less than forthright with the court in a recent court appearance.  EasyLink's Indian counsel advised EasyLink that it would be in breach of a court order unless it provided information about the proceeds of the sale to the court, that the company had no defense to the landlord's case, and that government approval could not be expected if

3

EasyLink defaulted on a judgment entered in the landlord's favor. The existence of even one of these problems at the time of the closing of the sale of ICI would place EasyLink in breach of the SPA and could have resulted in the requirement that it pay $150,000 in liquidated damages.

As the Opinion described, "by mid-December, EasyLink found itself trapped between the terms of the SPA and the demands of its creditors. With the various threats looming, it decided to terminate" the SPA. The Opinion continued, in EasyLink's view, "this would give it more freedom to reach agreements with ICI's creditors, including ICI management, and close the deal with the Buyer under new terms."

On December 19, EasyLink sent a letter terminating the sale agreement. It advised the Buyer that to continue negotiations, he would have to <u>inter alia</u> assume more ICI liabilities, including the amounts owed to the landlord, the vendor hosting the website, and $160,000 owed to ICI employees and management. It offered a significant reduction in the purchase price. The Buyer made a counter-proposal. That same day EasyLink shut down ICI and terminated its relationship with Dalal. EasyLink decided to tell the Buyer that if he wanted to buy the business in the future, he would have to deal directly with EasyLink (as opposed to Dalal), and that it would be a brand new deal.

At a later point in the Opinion, EasyLink's decision is described in these terms, "Ultimately, this litigation arises out of the dot.com bust. EasyLink, hurting for cash, decided to sell

4

a subsidiary. Dalal quickly found a buyer for the subsidiary, but for a variety of reasons the transaction did not move expeditiously. Ultimately, given the cash drain from keeping the subsidiary running, EasyLink decided that it could wait no longer and chose to pull out of its contract to sell the subsidiary."

The Opinion found that EasyLink breached the SPA agreement by improperly terminating it. EasyLink itself caused the non-performance of the very condition it identified as the reason for terminating the agreement, that is, the failure to get government approval by the date listed in the agreement. Because EasyLink had failed to pay its own Indian counsel, whose cooperation was required to submit the necessary paperwork to the government, the Buyer missed the application deadline.

In its remand decision, the Court of Appeals described the sole issue remanded for determination as follows: "Since the issue of whether EasyLink breached the SPA for the express purpose of avoiding Dalal's commission was not fully resolved by the District Court, we remand for further consideration." Id. at 324. As to the remanded issued, Dalal did not prove at trial that EasyLink breached the agreement to sell ICI for the express purpose of avoiding its duty to pay Dalal's commission. As a consequence, EasyLink is entitled to judgment.

In his recent submissions, Dalal admits that he has "never argued that Easylink [sic] terminated the SPA to avoid paying his commission." He argues instead that the Second Circuit opinion permits entry of judgment in his favor based on a finding that

5

EasyLink wrongfully terminated the SPA, and thereby violated its obligations to the Buyer. The Second Circuit's opinion cannot be construed in that way. If a finding of breach were enough, then a remand was unnecessary. The Second Circuit recognized that this Court had already found "that EasyLink had 'improperly terminated' and 'prematurely and wrongfully breached' the SPA." Id.

Conclusion

The Clerk of Court shall enter judgment for the plaintiff and close the case.

SO ORDERED:
Dated: New York, New York
April 18, 2006

                                        DENISE COTE
                            United States District Judge