UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
INDIA.COM, INC.,                        :
                                        :
                      Plaintiff,        :
                                        :
             -v-                        :
                                        :
SANDEEP DALAL,                          :
                                        :
                      Defendant.        :   02 Civ. 0111 (DLC)
                                        :
---------------------------------------:    OPINION & ORDER
                                        :
SANDEEP DALAL,                          :
                                        :
             Counterclaim-Plaintiff,    :
                                        :
             -v-                        :
                                        :
INDIA.COM, INC., EASYLINK SERVICES      :
CORPORATION, and INDIA HOLDINGS, INC.,  :
                                        :
             Counterclaim-Defendants.   :
                                        :
----------------------------------------X

APPEARANCES:

For Plaintiff/Counterclaim-Defendants:

William F. Mueller
Matthew A. Schiappa
Clemente Mueller, P.A.
5 Penn Plaza, 23rd Floor
New York, New York 10005

Pro Se Defendant/Counterclaim-Plaintiff:

Sandeep Dalal
1809 Devonshire Crescent
Houston, TX 77030

DENISE COTE, District Judge:

This Opinion addresses the damages to be awarded <u>pro</u> <u>se</u> defendant/counterclaim-plaintiff Sandeep Dalal ("Dalal") pursuant to the April 28, 2009 remand from the United States Court of Appeals for the Second Circuit.  On July 28, 2009, plaintiff/counterclaim-defendant India.com, Inc. ("ICI") was ordered to show cause why the amount of damages in the December 20, 2002 judgment[1] (the "December 2002 Judgment") should not be entered against ICI.  The parties' briefing became fully submitted on December 4, 2009.[2]  For the following reasons, the damages in the December 2002 Judgment and additional prejudgment interest are entered in favor of Dalal.


BACKGROUND

The following facts and procedural history are relevant to the damages inquiry in this long-running matter.  In November 2000, EasyLink Services Corporation ("EasyLink") decided to sell its subsidiary, ICI, through a holding company, India Holdings,

---

[1] The 2002 Judgment was signed on December 17, 2002, and filed on December 20, 2002, but was not entered on the docket sheet until December 26, 2002 [Dkt. No. 23].

[2] Dalal submitted a surreply in the form of a letter dated December 9, 2009.  None of his arguments therein would alter the conclusions reached in this Opinion.

Inc. ("IHI").[3]  ICI contracted with its former employee, Dalal,
to assist in finding a buyer for the company.  ICI and Dalal
signed three agreements, the last of which was dated October 26,
2001 and was signed by Dalal and the Chairman of EasyLink and
ICI (the "Third Agreement").  The Third Agreement provided that
Dalal would receive a commission of 12.5 percent of the
consideration paid by the buyer upon the closing of the
transaction.  Dalal found a buyer for ICI, namely Business
India.com, Ltd. ("BI" or "Buyer").  On October 26, 2001, BI and
ICI entered into a definitive Stock Purchase Agreement ("SPA"),
but ICI terminated the deal on December 19 before the
transaction closed.

    On January 3, 2002, EasyLink, through its subsidiary ICI,
filed a complaint against Dalal alleging, inter alia, breach of
fiduciary duty and seeking a declaratory judgment that it did
not owe Dalal a commission.  Dalal filed an answer and a
counterclaim and joined EasyLink and IHI.  Dalal sought payment
of a 12.5 percent commission based on the sale price of $8
million specified in the SPA.  A bench trial was held on
December 9, 2002 and an opinion was issued the same day (the
"December 2002 Opinion").

---

[3] EasyLink, ICI, and IHI are collectively referred to herein as
"EasyLink."

The December 2002 Opinion denied EasyLink's affirmative claims on the ground that it had not presented any legal theories of recovery and had not sufficiently established facts to support recovery under any of its claims. With respect to Dalal's counterclaims, the December 2002 Opinion found that only the Third Agreement was enforceable at the time the SPA was terminated, but denied Dalal's breach of contract claim on the ground that the Third Agreement required a closing of the transaction pursuant to the SPA. The December 2002 Opinion found, however, that EasyLink had improperly terminated the SPA and was liable to Dalal because he was a third-party beneficiary of the SPA.

The December 2002 Judgment's computation of damages, i.e., the amount Dalal would have earned as a commission, was based on the amounts that the Buyer was to pay EasyLink pursuant to the SPA on the following dates: (1) $250,000 on January 31, 2002; (2) $1,000,000 in stock issued on July 31, 2002; (3) $500,000 on October 26, 2002; (4) $1,000,000 on April 26, 2003; and $5,250,000 on October 26, 2003.[4] Because the parties failed to

---

[4] The latter three cash payments were to be made pursuant to the terms of a Promissory Note executed by BI. The Promissory Note contained incentives for early payment of the three installments. If BI availed itself of the incentives, the total amount paid under the note could have been as little as $3,370,000. For purposes of the damages calculation in the December 2002 Judgment, however, it was assumed that BI would

introduce sufficient evidence at trial on the value of the stock component of the consideration to be paid for ICI, the $1 million in stock was discounted by fifty percent such that the July 31, 2002 payment was valued at $500,000.  Applying Dalal's commission rate of 12.5 percent, and discounting the two payments that were to be made in 2003 to the present value, the amount of damages totaled $926,343.  In addition, Dalal was awarded prejudgment interest of $5,021 for a total judgment of $931,364.[5]

EasyLink filed a motion pursuant to Rule 59, Fed. R. Civ. P., to amend the December 2002 Judgment.  EasyLink's motion was granted and a declaratory judgment that it did not owe Dalal a commission was entered in its favor.  See India.com v. Dalal, No. 02 Civ. 111(DLC), 2003 WL 359293, at *4 (S.D.N.Y. Feb. 20, 2003) (the "February 2003 Opinion").  Dalal, in turn, filed a Rule 59 motion to reinstate the December 2002 Judgment, which was granted on September 10, 2003.  See India.com v. Dalal, No. 02 Civ. 111(DLC), 2003 WL 22093475, at *7-8 (S.D.N.Y. Sept. 10, 2003) (the "September 2003 Opinion").

---

have paid the three installments on the maturity dates as scheduled.

[5] Prejudgment interest was calculated at 9 percent on $250,000 from January 31, 2002 ($2,399.18); $500,000 from July 31, 2002 ($1960.13); and $500,000 from October 26, 2002 ($661.78).

EasyLink appealed the December 2002 Judgment and Dalal cross-appealed.  On June 20, 2005, the Second Circuit reversed the December 2002 Judgment and set aside the damages award, finding that the SPA barred recovery by third-party beneficiaries.  See India.com, Inc. v. Dalal, 412 F.3d 315, 322 (2d Cir. 2005).  The Second Circuit remanded for further proceedings to determine whether EasyLink, in bad faith, caused the sale of ICI not to close for the purpose of depriving Dalal of a commission pursuant to the Third Agreement.  Id. at 324. On remand, the parties were advised that they were confined to the trial record as it stood at the time of trial.  Finding that Dalal had not proved at trial that EasyLink terminated the SPA for the express purpose of denying Dalal a commission, see India.com v. Dalal, No. 02 Civ. 111(DLC), 2006 WL 1000398, at *2 (S.D.N.Y. Apr. 18, 2006), judgment was entered in favor of EasyLink on April 26, 2006 (the "April 2006 Judgment").

Dalal appealed the April 2006 Judgment.  In an unpublished opinion dated April 28, 2009, the Second Circuit reversed the April 2006 Judgment.  See India.com, Inc. v. Dalal, 324 Fed.Appx. 59 (2d Cir. 2009).  The court found that EasyLink breached its duty of good faith and fair dealing under the Third Agreement with Dalal by wrongfully terminating the SPA.  Id. at 62.  Even though the sale of ICI did not close, and closure was a condition to Dalal receiving a commission under the Third

Agreement, the court held that Dalal could nonetheless recover.
Id.  The action was remanded to enter judgment in favor of Dalal
and to set damages.  Id.   The mandate issued on July 21, 2009.


                              DISCUSSION

      EasyLink attacks the December 2002 Judgment by arguing that
it is not liable to Dalal.  If it is liable, EasyLink argues
that certain adjustments to the damages calculation in the
December 2002 Judgment are warranted.  EasyLink also objects to
Dalal's request for additional prejudgment interest, attorneys'
fees, and taxing of costs.  EasyLink's arguments concerning its
liability are addressed first.


1.  EasyLink's Liability
      EasyLink first attempts to evade liability altogether by
arguing: (1) that ICI's corporate veil has not been pierced with
respect to the Third Agreement to reach and hold liable its
parent company, EasyLink; and (2) because Dalal did not prove at
trial that he produced a ready, willing and able buyer, he is
not entitled to damages.  Both arguments are beyond the scope of
the remand from the Second Circuit, which is limited to setting
damages, and in any event are without merit.
      EasyLink's first argument is foreclosed by its failure to
contest its own liability at trial.  The December 2002 Opinion

                                  7

specifically found that EasyLink had "not contested liability by
reference to the identity of any signatory on any of the
relevant documents or by reference to the web of corporate
ownership among the various companies in the EasyLink family of
companies."  Further, it became clear during the bench trial
that "it was the executives and owners of EasyLink that did make
all of the critical decisions at issue here on behalf of ICI and
the counterclaim defendants."  As such, EasyLink's veil-piercing
argument is both untimely and without merit.

EasyLink's second argument that Dalal is not entitled to
damages because he did not prove that he produced a ready,
willing and able buyer was also rejected at trial and in
subsequent opinions.  The December 2002 Opinion found that that
common law defense did not apply to a contract claim.  Further,
the December 2002 Opinion found that "since EasyLink prematurely
and wrongfully breached the SPA, it will never be known whether
the Buyer would have complied with its obligations on or about
January 31.  EasyLink certainly has not shown that the Buyer
would not have done so."  EasyLink raised this exact argument in
its Rule 59 motion, which was rejected in the September 2003
Opinion.  See India.com v. Dalal, 2003 WL 22093475, at *7-8.
The September 2003 Opinion found that Dalal had met his burden
at trial to demonstrate that he was entitled to damages.
Specifically, "Dalal showed that EasyLink continued to treat BI

as a ready, willing and able buyer even after the termination, and BI acted as such.  This is sufficient to entitle Dalal to damages."  Id. at *8.  EasyLink does not argue, nor could it, that this conclusion is altered by the fact that EasyLink's liability is now based on its breach of the duty of good faith and fair dealing under the Third Agreement, rather than the theory that Dalal was a third-party beneficiary of the SPA. EasyLink's argument is thus without merit.


2.  Damages Calculation

    EasyLink next advances two arguments for why the damages calculation in the December 2002 Judgment was erroneous.  First, EasyLink contends that the $1 million in stock that was to be paid on July 31, 2002 should not have been discounted by fifty percent, but rather valued at zero because Dalal failed to meet his burden of proving the value of the stock component at trial. EasyLink raised this same argument at trial when the issue of damages was addressed, and it was rejected.  Even now EasyLink provides no legal authority to support its claim that the fifty percent discount was inappropriate.  In fact, EasyLink overstates the burden that was on Dalal to prove the amount of his damages at trial.

    Under the New York "wrongdoer rule," where "the existence of damage is certain, and the only uncertainty is as to its

amount, . . . the burden of uncertainty as to the amount of damage is upon the wrongdoer." Boyce v. Soundview Technology Group, Inc., 464 F.3d 376, 391 (2d Cir. 2006) (citing Schonfeld v. Hilliard, 218 F.3d 164, 174-75 (2d Cir. 2000)). "[I]t is always the breaching party (read: 'wrongdoer') who must shoulder the burden of the uncertainty regarding the amount of damages." Id. (emphasis added). Because only the value of the stock, not Dalal's entitlement to this component of damages, was in question at trial, EasyLink, as the breaching party, bore the burden of proving that the stock component was worthless. Since EasyLink failed to meet its burden, its objection to the fifty percent discount fails.[6]

EasyLink also objects to Dalal's present attempt to introduce new evidence concerning the value of the stock component based on the performance of purportedly comparable Indian stocks over the past seven years. EasyLink is correct that Dalal's attempt is untimely. As Dalal concedes in his brief, he "did not seek additional damages [as to the stock component] at trial . . . because dotcom [sic] valuations were still depressed in late-2002, and it would have appeared speculative to seek the same in advance of actual improvements

---

[6] EasyLink does not assert that it made this argument in its post-trial Rule 59 motion, but it is unnecessary to reach the issue of waiver since the burden to prove the amount of damages in the face of uncertainty rests on EasyLink.

in valuations."  To allow Dalal to supplement the trial record
now, seven years after he chose not to challenge the fifty
percent discount applied to the stock component, would be
inappropriate and unfair.

EasyLink's second argument with respect to the damages
calculation in the December 2002 Judgment is that due to the
incentives for early payment contained in the Promissory Note,
the Court should have assumed that the Buyer would have acted in
its economic self-interest and paid only $3,370,000, rather than
the $6,750,000 contemplated by the note's maturity schedule.
This argument has been considered and rejected twice before.  In
an Order dated December 19, 2002, EasyLink's objection to the
December 2002 Judgment based on the same grounds was rejected
because EasyLink had failed to present the argument, or an
alternative damages calculation, during the discussion of
damages at trial.  The argument was again rejected as untimely
in the September 2003 Opinion that granted Dalal's Rule 59
motion.  See India.com v. Dalal, 2003 WL 22093475, at *8.
EasyLink provides no reason why this argument is not still
untimely today.

In sum, EasyLink's objections to the damages calculation in
the December 2002 Judgment are without merit, as is Dalal's
attempt to increase the valuation of the stock component.  Thus,
the only necessary adjustment to the December 2002 damages

11

calculation is the elimination of the discount that was applied
to obtain present value of the two payments that were to be made
in 2003 after the entry of the judgment.  Accordingly, Dalal is
entitled to a total damages award of $937,500.00, which
represents 12.5 percent of the $7.5 million value of the
consideration that the Buyer would have paid to EasyLink
pursuant to the SPA.


3.  Prejudgment Interest

     Dalal is also entitled to prejudgment interest from the
dates that the payments were to have been made under the SPA
until the entry of judgment pursuant to the Second Circuit's
April 28, 2009 remand.  The date of entry of the instant
judgment is the appropriate demarcation between the payment of
prejudgment and postjudgment interest.  See Westinghouse Credit
Corp. v. D'Urso, 371 F.3d 96, 104 (2d Cir. 2004).  Because the
Second Circuit reversed both the December 2002 and April 2006
Judgments, it cannot be said that judgment has yet been
"ascertained in a meaningful way."  Id.  "Where a judgment is
vacated because it lacks a legal basis or requires further
factual development, the vacated award should be treated as a
nullity and post-judgment interest therefore accrues from the
entry of judgment on remand."  Id. (citation omitted).


12

EasyLink argues that Dalal is not entitled to additional prejudgment interest because the Second Circuit's mandate did not include instructions as to the awarding of interest, citing Westinghouse, 371 F.3d 96.  EasyLink's argument rests on a misreading of the Second Circuit's decision in Westinghouse.  In Westinghouse, the court interpreted the rule set forth in Briggs v. Pennsylvania Railroad Co., 334 U.S. 304, 306 (1948), as codified in Fed R. App. P. 37(b), which holds that if the mandate from the court of appeals requires the district court to enter a money judgment, but does not contain instructions about the allowance of interest, the district court is "powerless to award interest during the period between its original judgment and the judgment it enters on remand."  Westinghouse, 371 F.3d at 103 (citation omitted).  The court noted, however, that in order for the Briggs rule to apply, "there must be at least some indication that the mandate is directing entry of a particular money judgment.  In the absence of such an indication, the district court should not be barred from awarding interest on its own, since doing so would not deviate from the mandate."  Id.  (emphasis in original).

In this case, the Second Circuit's mandate did not direct the entry of a particular money judgment, but rather remanded the case to "set damages."  See India.com, 324 Fed.Appx. at 62.  As in Westinghouse, the mandate in this case did not "suggest[]

13

what the amount of the judgment should be or that the judgment could be entered by the district court without further proceedings." <u>Westinghouse</u>, 371 F.3d at 104.  Accordingly, prejudgment interest shall be awarded at the rate of nine percent from the date at which the payments should have been made pursuant to the SPA until the date of entry of this final judgment.  <u>See</u> N.Y. C.P.L.R. §§ 5001, 5004.  Applying this formula, Dalal is entitled to prejudgment interest of $544,846.75.[7]


4.  Attorneys' Fees

Dalal contends that EasyLink is liable for his attorneys' fees based on the indemnification provision in section 5 of his original engagement letter with ICI.[8]  Under New York law,

---

[7] Total prejudgment interest of $544,846.75 is calculated at 9 percent on $250,000 from January 31, 2002 ($22,268.84); $500,000 from July 31, 2002 ($41,748.29); $500,000 from October 26, 2002 ($40,407.53); $1 million from April 26, 2003 ($75,205.48); and $5.25 million from October 26, 2003 ($365,216.61).

[8] Section 5 of the original engagement letter provides, in pertinent part:

> The Company agrees to indemnify and hold harmless Mr. Dalal to the full extent lawful against any and all claims, losses, damages, liabilities, costs and expenses incurred (including all reasonable fees and disbursements of counsel . . . incurred in connection with investigation of, preparation for and any defense of any pending or threatened claim and any litigation or other proceeding arising therefrom, whether or not in connection with pending or threatened litigation in which Mr. Dalal or any other indemnified person is a

"attorneys' fees are the ordinary incidents of litigation and may not be awarded to the prevailing party unless authorized by agreement between the parties, statute, or court rule."  Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 199 (2d Cir. 2003); accord Hooper Associates, Ltd. v. AGS Computers, Inc., 548 N.E.2d 903, 904 (N.Y. 1989).  "Because promises in a contract to indemnify the other party's attorney's fees run against the grain of the accepted policy that parties are responsible for their own attorneys' fees, courts applying New York law should not infer a party's intention to provide counsel fees as damages for a breach of contract unless the intention to do so is 'unmistakably clear' from the language of the contract."  Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 177 (2d Cir. 2005) (citing Hooper Associates, 548 N.E.2d at 905).

As in Hooper Associates, the indemnification clause in section 5 of the engagement letter "does not contain language clearly permitting" Dalal to recover from EasyLink the attorneys' fees incurred in a suit between the parties.  See

party) arising out of or related to any actual or proposed Transaction or Mr. Dalal's engagement hereunder . . . .  The Company shall have the exclusive right to control the defense and settlement of any matter that may give rise to indemnification obligations hereunder.  Mr. Dalal agrees to notify the Company promptly after any matter that may give rise to indemnification hereunder arises.  (Emphasis added.)

Hooper, 548 N.E.2d at 905; see also Oscar Gruss, 337 F.3d at
199-200.  On the contrary, the language is typical of
indemnification clauses which contemplate reimbursement only
when the indemnitee is required to pay damages on a third-party
claim.  Hooper, 548 N.E.2d at 905.  This narrow interpretation
of the indemnification clause is supported by other language in
section 5 which requires Dalal to notify EasyLink of "any matter
that may give rise to indemnification" under the agreement and
grants EasyLink "the exclusive right to control the defense and
settlement of any matter that may give rise to indemnification
obligations."  To extend the indemnification clause to require
EasyLink to reimburse Dalal for attorneys' fees in a breach of
contract action against EasyLink would render these provisions
meaningless, which is to be avoided.  See id.; see also Mid-
Hudson, 418 F.3d at 177 & n.4; Oscar Gruss, 337 F.3d at 200.

Even if section 5 provided for payment of Dalal's
attorneys' fees in a suit against EasyLink, Dalal's request
still fails because the original engagement letter was no longer
in effect at the time EasyLink terminated the SPA.  The December
2002 Opinion found that the Third Agreement did not extend the
expiration period of the original engagement letter between ICI
and Dalal.  Rather, "[t]he only contractual right of the
defendant [Dalal] which survived the expiration of the
Engagement Letter on November 14 and which was still enforceable

16

as of December 19 was his right to payment of the specified fee
if the deal closed pursuant to the SPA." Because the Third
Agreement did not preserve any right to attorneys' fees in the
original engagement letter, there is no valid contractual basis
for Dalal's request.

Dalal argues that section 6 of the original engagement
letter preserved his right to attorneys' fees under section 5.
Section 6 of the original engagement letter provides, in
pertinent part: "The agreement will terminate automatically 90
days after the date of this agreement except for the relevant
provisions of Sections 3, 4 and 5 which shall survive any
termination." Section 6 does not specify the "relevant
provisions" of section 5 that were to survive termination of the
engagement letter. But even if such "relevant provisions"
included the portions of section 5 that Dalal claims entitle him
to attorneys' fees, the engagement letter was superseded by the
Third Agreement -- which is the sole contractual basis for
Dalal's recovery of damages in this action. Dalal does not
contend, nor could he, that the Third Agreement contains any
language that entitles him to attorneys' fees. Dalal's request
for attorneys' fees based on the language in the original
engagement letter is therefore without merit.

Dalal also argues that he is entitled to attorneys' fees
because EasyLink's lawsuit was "frivolous." Under New York law,

"[t]he court, in its discretion, may award to any party or attorney in any civil action or proceeding before the court, except where prohibited by law, . . . reasonable attorney's fees, resulting from frivolous conduct." N.Y. Comp. Codes R. & Regs. tit. 22, § 130-1.1(a).[9] Although EasyLink's affirmative claims against Dalal were dismissed in the December 2002 Opinion, the claims were not so lacking in merit that it should be punished for having made them. Indeed, among EasyLink's affirmative claims was a request for declaratory judgment that it owed no commission to Dalal. Although this claim has since been denied, EasyLink did obtain a declaratory judgment in its favor in the February 2003 Opinion, won on appeal in 2005, and again obtained a judgment in its favor in the April 2006 Judgment. Furthermore, the bulk of attorneys' fees claimed by Dalal were incurred in pursuit of his counterclaims against EasyLink, not in connection with his defense of EasyLink's claims against him. As such, this is not an appropriate case in

---

[9] "Frivolous conduct" is defined to include any action if:

> (1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; (2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or (3) it asserts material factual statements that are false.

N.Y. Comp. Codes R. & Regs. tit. 22, § 130-1.1(c).

which to award attorneys' fees based on purported frivolous
claims brought by the plaintiff.

5.  Bill of Costs

        Finally, Dalal requests that the Court "verify the Bill of
Costs and enter damages in the amount of $21,071.93" in his
favor.  Dalal submitted his Bill of Costs to the Clerk of Court
on August 1, 2009.  Local Rule 54.1 provides that taxable costs
may be requested 30 days after the entry of final judgment.
Because no final judgment has yet been entered, Dalal's
submission was premature.  Pursuant to Local Rule 54.1, Dalal
shall have 30 days after the entry of this final judgment to
submit to the Clerk his request to tax costs.

CONCLUSION

        The Clerk of Court shall enter final judgment in favor of
Sandeep Dalal in the amount of $937,500.00 plus prejudgment
interest of $544,846.75, for a total award of $1,482,346.75.


        SO ORDERED.

Dated:    New York, New York
          December 30, 2009

                                        _____
                                        DENISE COTE
                                        United States District Judge


19