```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
INDIA.COM, INC.,                        :
                                        :
                    Plaintiff,          :
                                        :
          -v-                           :
                                        :
SANDEEP DALAL,                          :
                                        :
                    Defendant.          :   02 Civ. 0111 (DLC)
                                        :
----------------------------------------:   OPINION & ORDER
                                        :
SANDEEP DALAL,                          :
                                        :
          Counterclaim-Plaintiff,       :
                                        :
          -v-                           :
                                        :
INDIA.COM, INC., EASYLINK SERVICES      :
CORPORATION, and INDIA HOLDINGS, INC.,  :
                                        :
          Counterclaim-Defendants.      :
                                        :
----------------------------------------X
```

APPEARANCES:

For Plaintiff/Counterclaim-Defendants:

William F. Mueller
Matthew A. Schiappa
Clemente Mueller, P.A.
5 Penn Plaza, 23rd Floor
New York, New York 10005

Pro Se Defendant/Counterclaim-Plaintiff:

Sandeep Dalal
1809 Devonshire Crescent
Houston, TX 77030

DENISE COTE, District Judge:

This Opinion addresses the damages to be awarded pro se defendant/counterclaim-plaintiff Sandeep Dalal ("Dalal") pursuant to the April 28, 2009 remand from the United States Court of Appeals for the Second Circuit.  On July 28, 2009, plaintiff/counterclaim-defendant India.com, Inc. ("ICI") was ordered to show cause why the amount of damages in the December 20, 2002 judgment[1] (the "December 2002 Judgment") should not be entered against ICI.  The parties' briefing became fully submitted on December 4, 2009.[2]  For the following reasons, the damages in the December 2002 Judgment and additional prejudgment interest are entered in favor of Dalal.

BACKGROUND

The following facts and procedural history are relevant to the damages inquiry in this long-running matter.  In November 2000, EasyLink Services Corporation ("EasyLink") decided to sell its subsidiary, ICI, through a holding company, India Holdings,

---

[1] The 2002 Judgment was signed on December 17, 2002, and filed on December 20, 2002, but was not entered on the docket sheet until December 26, 2002 [Dkt. No. 23].

[2] Dalal submitted a surreply in the form of a letter dated December 9, 2009.  None of his arguments therein would alter the conclusions reached in this Opinion.

Inc. ("IHI").[3]  ICI contracted with its former employee, Dalal, to assist in finding a buyer for the company.  ICI and Dalal signed three agreements, the last of which was dated October 26, 2001 and was signed by Dalal and the Chairman of EasyLink and ICI (the "Third Agreement").  The Third Agreement provided that Dalal would receive a commission of 12.5 percent of the consideration paid by the buyer upon the closing of the transaction.  Dalal found a buyer for ICI, namely Business India.com, Ltd. ("BI" or "Buyer").  On October 26, 2001, BI and ICI entered into a definitive Stock Purchase Agreement ("SPA"), but ICI terminated the deal on December 19 before the transaction closed.

On January 3, 2002, EasyLink, through its subsidiary ICI, filed a complaint against Dalal alleging, inter alia, breach of fiduciary duty and seeking a declaratory judgment that it did not owe Dalal a commission.  Dalal filed an answer and a counterclaim and joined EasyLink and IHI.  Dalal sought payment of a 12.5 percent commission based on the sale price of $8 million specified in the SPA.  A bench trial was held on December 9, 2002 and an opinion was issued the same day (the "December 2002 Opinion").

---

[3] EasyLink, ICI, and IHI are collectively referred to herein as "EasyLink."

3

The December 2002 Opinion denied EasyLink's affirmative claims on the ground that it had not presented any legal theories of recovery and had not sufficiently established facts to support recovery under any of its claims.  With respect to Dalal's counterclaims, the December 2002 Opinion found that only the Third Agreement was enforceable at the time the SPA was terminated, but denied Dalal's breach of contract claim on the ground that the Third Agreement required a closing of the transaction pursuant to the SPA.  The December 2002 Opinion found, however, that EasyLink had improperly terminated the SPA and was liable to Dalal because he was a third-party beneficiary of the SPA.

The December 2002 Judgment's computation of damages, i.e., the amount Dalal would have earned as a commission, was based on the amounts that the Buyer was to pay EasyLink pursuant to the SPA on the following dates:  (1) $250,000 on January 31, 2002; (2) $1,000,000 in stock issued on July 31, 2002; (3) $500,000 on October 26, 2002; (4) $1,000,000 on April 26, 2003; and $5,250,000 on October 26, 2003.[4]  Because the parties failed to

---

[4] The latter three cash payments were to be made pursuant to the terms of a Promissory Note executed by BI.  The Promissory Note contained incentives for early payment of the three installments.  If BI availed itself of the incentives, the total amount paid under the note could have been as little as $3,370,000.  For purposes of the damages calculation in the December 2002 Judgment, however, it was assumed that BI would

4

introduce sufficient evidence at trial on the value of the stock component of the consideration to be paid for ICI, the $1 million in stock was discounted by fifty percent such that the July 31, 2002 payment was valued at $500,000.  Applying Dalal's commission rate of 12.5 percent, and discounting the two payments that were to be made in 2003 to the present value, the amount of damages totaled $926,343.  In addition, Dalal was awarded prejudgment interest of $5,021 for a total judgment of $931,364.[5]

EasyLink filed a motion pursuant to Rule 59, Fed. R. Civ. P., to amend the December 2002 Judgment.  EasyLink's motion was granted and a declaratory judgment that it did not owe Dalal a commission was entered in its favor.  See India.com v. Dalal, No. 02 Civ. 111(DLC), 2003 WL 359293, at *4 (S.D.N.Y. Feb. 20, 2003) (the "February 2003 Opinion").  Dalal, in turn, filed a Rule 59 motion to reinstate the December 2002 Judgment, which was granted on September 10, 2003.  See India.com v. Dalal, No. 02 Civ. 111(DLC), 2003 WL 22093475, at *7-8 (S.D.N.Y. Sept. 10, 2003) (the "September 2003 Opinion").

---

have paid the three installments on the maturity dates as scheduled.

[5] Prejudgment interest was calculated at 9 percent on $250,000 from January 31, 2002 ($2,399.18); $500,000 from July 31, 2002 ($1960.13); and $500,000 from October 26, 2002 ($661.78).

EasyLink appealed the December 2002 Judgment and Dalal cross-appealed.  On June 20, 2005, the Second Circuit reversed the December 2002 Judgment and set aside the damages award, finding that the SPA barred recovery by third-party beneficiaries.  See India.com, Inc. v. Dalal, 412 F.3d 315, 322 (2d Cir. 2005).  The Second Circuit remanded for further proceedings to determine whether EasyLink, in bad faith, caused the sale of ICI not to close for the purpose of depriving Dalal of a commission pursuant to the Third Agreement.  Id. at 324.  On remand, the parties were advised that they were confined to the trial record as it stood at the time of trial.  Finding that Dalal had not proved at trial that EasyLink terminated the SPA for the express purpose of denying Dalal a commission, see India.com v. Dalal, No. 02 Civ. 111(DLC), 2006 WL 1000398, at *2 (S.D.N.Y. Apr. 18, 2006), judgment was entered in favor of EasyLink on April 26, 2006 (the "April 2006 Judgment").

Dalal appealed the April 2006 Judgment.  In an unpublished opinion dated April 28, 2009, the Second Circuit reversed the April 2006 Judgment.  See India.com, Inc. v. Dalal, 324 Fed.Appx. 59 (2d Cir. 2009).  The court found that EasyLink breached its duty of good faith and fair dealing under the Third Agreement with Dalal by wrongfully terminating the SPA.  Id. at 62.  Even though the sale of ICI did not close, and closure was a condition to Dalal receiving a commission under the Third

6

Agreement, the court held that Dalal could nonetheless recover. Id.  The action was remanded to enter judgment in favor of Dalal and to set damages.  Id.   The mandate issued on July 21, 2009.

DISCUSSION

EasyLink attacks the December 2002 Judgment by arguing that it is not liable to Dalal.  If it is liable, EasyLink argues that certain adjustments to the damages calculation in the December 2002 Judgment are warranted.  EasyLink also objects to Dalal's request for additional prejudgment interest, attorneys' fees, and taxing of costs.  EasyLink's arguments concerning its liability are addressed first.

1.  EasyLink's Liability

EasyLink first attempts to evade liability altogether by arguing: (1) that ICI's corporate veil has not been pierced with respect to the Third Agreement to reach and hold liable its parent company, EasyLink; and (2) because Dalal did not prove at trial that he produced a ready, willing and able buyer, he is not entitled to damages.  Both arguments are beyond the scope of the remand from the Second Circuit, which is limited to setting damages, and in any event are without merit.

EasyLink's first argument is foreclosed by its failure to contest its own liability at trial.  The December 2002 Opinion

7

specifically found that EasyLink had "not contested liability by reference to the identity of any signatory on any of the relevant documents or by reference to the web of corporate ownership among the various companies in the EasyLink family of companies."  Further, it became clear during the bench trial that "it was the executives and owners of EasyLink that did make all of the critical decisions at issue here on behalf of ICI and the counterclaim defendants."  As such, EasyLink's veil-piercing argument is both untimely and without merit.

EasyLink's second argument that Dalal is not entitled to damages because he did not prove that he produced a ready, willing and able buyer was also rejected at trial and in subsequent opinions.  The December 2002 Opinion found that that common law defense did not apply to a contract claim.  Further, the December 2002 Opinion found that "since EasyLink prematurely and wrongfully breached the SPA, it will never be known whether the Buyer would have complied with its obligations on or about January 31.  EasyLink certainly has not shown that the Buyer would not have done so."  EasyLink raised this exact argument in its Rule 59 motion, which was rejected in the September 2003 Opinion.  See India.com v. Dalal, 2003 WL 22093475, at *7-8.  The September 2003 Opinion found that Dalal had met his burden at trial to demonstrate that he was entitled to damages.  Specifically, "Dalal showed that EasyLink continued to treat BI

as a ready, willing and able buyer even after the termination, and BI acted as such.  This is sufficient to entitle Dalal to damages."  Id. at *8.  EasyLink does not argue, nor could it, that this conclusion is altered by the fact that EasyLink's liability is now based on its breach of the duty of good faith and fair dealing under the Third Agreement, rather than the theory that Dalal was a third-party beneficiary of the SPA.  EasyLink's argument is thus without merit.

2.  Damages Calculation

EasyLink next advances two arguments for why the damages calculation in the December 2002 Judgment was erroneous.  First, EasyLink contends that the $1 million in stock that was to be paid on July 31, 2002 should not have been discounted by fifty percent, but rather valued at zero because Dalal failed to meet his burden of proving the value of the stock component at trial.  EasyLink raised this same argument at trial when the issue of damages was addressed, and it was rejected.  Even now EasyLink provides no legal authority to support its claim that the fifty percent discount was inappropriate.  In fact, EasyLink overstates the burden that was on Dalal to prove the amount of his damages at trial.

Under the New York "wrongdoer rule," where "the existence of damage is certain, and the only uncertainty is as to its

9

amount, . . . the burden of uncertainty as to the amount of damage is upon the wrongdoer." Boyce v. Soundview Technology Group, Inc., 464 F.3d 376, 391 (2d Cir. 2006) (citing Schonfeld v. Hilliard, 218 F.3d 164, 174-75 (2d Cir. 2000)). "[I]t is always the breaching party (read: 'wrongdoer') who must shoulder the burden of the uncertainty regarding the amount of damages." Id. (emphasis added). Because only the value of the stock, not Dalal's entitlement to this component of damages, was in question at trial, EasyLink, as the breaching party, bore the burden of proving that the stock component was worthless. Since EasyLink failed to meet its burden, its objection to the fifty percent discount fails.[6]

EasyLink also objects to Dalal's present attempt to introduce new evidence concerning the value of the stock component based on the performance of purportedly comparable Indian stocks over the past seven years. EasyLink is correct that Dalal's attempt is untimely. As Dalal concedes in his brief, he "did not seek additional damages [as to the stock component] at trial . . . because dotcom [sic] valuations were still depressed in late-2002, and it would have appeared speculative to seek the same in advance of actual improvements

---

[6] EasyLink does not assert that it made this argument in its post-trial Rule 59 motion, but it is unnecessary to reach the issue of waiver since the burden to prove the amount of damages in the face of uncertainty rests on EasyLink.

in valuations." To allow Dalal to supplement the trial record now, seven years after he chose not to challenge the fifty percent discount applied to the stock component, would be inappropriate and unfair.

EasyLink's second argument with respect to the damages calculation in the December 2002 Judgment is that due to the incentives for early payment contained in the Promissory Note, the Court should have assumed that the Buyer would have acted in its economic self-interest and paid only $3,370,000, rather than the $6,750,000 contemplated by the note's maturity schedule. This argument has been considered and rejected twice before. In an Order dated December 19, 2002, EasyLink's objection to the December 2002 Judgment based on the same grounds was rejected because EasyLink had failed to present the argument, or an alternative damages calculation, during the discussion of damages at trial. The argument was again rejected as untimely in the September 2003 Opinion that granted Dalal's Rule 59 motion. See India.com v. Dalal, 2003 WL 22093475, at *8. EasyLink provides no reason why this argument is not still untimely today.

In sum, EasyLink's objections to the damages calculation in the December 2002 Judgment are without merit, as is Dalal's attempt to increase the valuation of the stock component. Thus, the only necessary adjustment to the December 2002 damages

11

calculation is the elimination of the discount that was applied to obtain present value of the two payments that were to be made in 2003 after the entry of the judgment.  Accordingly, Dalal is entitled to a total damages award of $937,500.00, which represents 12.5 percent of the $7.5 million value of the consideration that the Buyer would have paid to EasyLink pursuant to the SPA.

3.   Prejudgment Interest

Dalal is also entitled to prejudgment interest from the dates that the payments were to have been made under the SPA until the entry of judgment pursuant to the Second Circuit's April 28, 2009 remand.  The date of entry of the instant judgment is the appropriate demarcation between the payment of prejudgment and postjudgment interest.  See Westinghouse Credit Corp. v. D'Urso, 371 F.3d 96, 104 (2d Cir. 2004).  Because the Second Circuit reversed both the December 2002 and April 2006 Judgments, it cannot be said that judgment has yet been "ascertained in a meaningful way."  Id.  "Where a judgment is vacated because it lacks a legal basis or requires further factual development, the vacated award should be treated as a nullity and post-judgment interest therefore accrues from the entry of judgment on remand."  Id. (citation omitted).

EasyLink argues that Dalal is not entitled to additional prejudgment interest because the Second Circuit's mandate did not include instructions as to the awarding of interest, citing Westinghouse, 371 F.3d 96. EasyLink's argument rests on a misreading of the Second Circuit's decision in Westinghouse. In Westinghouse, the court interpreted the rule set forth in Briggs v. Pennsylvania Railroad Co., 334 U.S. 304, 306 (1948), as codified in Fed R. App. P. 37(b), which holds that if the mandate from the court of appeals requires the district court to enter a money judgment, but does not contain instructions about the allowance of interest, the district court is "powerless to award interest during the period between its original judgment and the judgment it enters on remand." Westinghouse, 371 F.3d at 103 (citation omitted). The court noted, however, that in order for the Briggs rule to apply, "there must be at least some indication that the mandate is directing entry of a particular money judgment. In the absence of such an indication, the district court should not be barred from awarding interest on its own, since doing so would not deviate from the mandate." Id. (emphasis in original).

In this case, the Second Circuit's mandate did not direct the entry of a particular money judgment, but rather remanded the case to "set damages." See India.com, 324 Fed.Appx. at 62. As in Westinghouse, the mandate in this case did not "suggest[]

13

what the amount of the judgment should be or that the judgment could be entered by the district court without further proceedings."  Westinghouse, 371 F.3d at 104.  Accordingly, prejudgment interest shall be awarded at the rate of nine percent from the date at which the payments should have been made pursuant to the SPA until the date of entry of this final judgment.  See N.Y. C.P.L.R. §§ 5001, 5004.  Applying this formula, Dalal is entitled to prejudgment interest of $544,846.75.[7]

4.  Attorneys' Fees

Dalal contends that EasyLink is liable for his attorneys' fees based on the indemnification provision in section 5 of his original engagement letter with ICI.[8]  Under New York law,

---

[7] Total prejudgment interest of $544,846.75 is calculated at 9 percent on $250,000 from January 31, 2002 ($22,268.84); $500,000 from July 31, 2002 ($41,748.29); $500,000 from October 26, 2002 ($40,407.53); $1 million from April 26, 2003 ($75,205.48); and $5.25 million from October 26, 2003 ($365,216.61).

[8] Section 5 of the original engagement letter provides, in pertinent part:

> The Company agrees to indemnify and hold harmless Mr. Dalal to the full extent lawful against any and all claims, losses, damages, liabilities, costs and expenses incurred (including all reasonable fees and disbursements of counsel . . . incurred in connection with investigation of, preparation for and any defense of any pending or threatened claim and any litigation or other proceeding arising therefrom, whether or not in connection with pending or threatened litigation in which Mr. Dalal or any other indemnified person is a

"attorneys' fees are the ordinary incidents of litigation and may not be awarded to the prevailing party unless authorized by agreement between the parties, statute, or court rule."  Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 199 (2d Cir. 2003); accord Hooper Associates, Ltd. v. AGS Computers, Inc., 548 N.E.2d 903, 904 (N.Y. 1989).  "Because promises in a contract to indemnify the other party's attorney's fees run against the grain of the accepted policy that parties are responsible for their own attorneys' fees, courts applying New York law should not infer a party's intention to provide counsel fees as damages for a breach of contract unless the intention to do so is 'unmistakably clear' from the language of the contract."  Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 177 (2d Cir. 2005) (citing Hooper Associates, 548 N.E.2d at 905).

As in Hooper Associates, the indemnification clause in section 5 of the engagement letter "does not contain language clearly permitting" Dalal to recover from EasyLink the attorneys' fees incurred in a suit between the parties.  See

---

> party) arising out of or related to any actual or proposed Transaction or Mr. Dalal's engagement hereunder . . . .  The Company shall have the exclusive right to control the defense and settlement of any matter that may give rise to indemnification obligations hereunder.  Mr. Dalal agrees to notify the Company promptly after any matter that may give rise to indemnification hereunder arises.  (Emphasis added.)

Hooper, 548 N.E.2d at 905; see also Oscar Gruss, 337 F.3d at 199-200.  On the contrary, the language is typical of indemnification clauses which contemplate reimbursement only when the indemnitee is required to pay damages on a third-party claim.  Hooper, 548 N.E.2d at 905.  This narrow interpretation of the indemnification clause is supported by other language in section 5 which requires Dalal to notify EasyLink of "any matter that may give rise to indemnification" under the agreement and grants EasyLink "the exclusive right to control the defense and settlement of any matter that may give rise to indemnification obligations."  To extend the indemnification clause to require EasyLink to reimburse Dalal for attorneys' fees in a breach of contract action against EasyLink would render these provisions meaningless, which is to be avoided.  See id.; see also Mid-Hudson, 418 F.3d at 177 & n.4; Oscar Gruss, 337 F.3d at 200.

Even if section 5 provided for payment of Dalal's attorneys' fees in a suit against EasyLink, Dalal's request still fails because the original engagement letter was no longer in effect at the time EasyLink terminated the SPA.  The December 2002 Opinion found that the Third Agreement did not extend the expiration period of the original engagement letter between ICI and Dalal.  Rather, "[t]he only contractual right of the defendant [Dalal] which survived the expiration of the Engagement Letter on November 14 and which was still enforceable

16

as of December 19 was his right to payment of the specified fee if the deal closed pursuant to the SPA."  Because the Third Agreement did not preserve any right to attorneys' fees in the original engagement letter, there is no valid contractual basis for Dalal's request.

Dalal argues that section 6 of the original engagement letter preserved his right to attorneys' fees under section 5.  Section 6 of the original engagement letter provides, in pertinent part:  "The agreement will terminate automatically 90 days after the date of this agreement except for the relevant provisions of Sections 3, 4 and 5 which shall survive any termination."  Section 6 does not specify the "relevant provisions" of section 5 that were to survive termination of the engagement letter.  But even if such "relevant provisions" included the portions of section 5 that Dalal claims entitle him to attorneys' fees, the engagement letter was superseded by the Third Agreement -- which is the sole contractual basis for Dalal's recovery of damages in this action.  Dalal does not contend, nor could he, that the Third Agreement contains any language that entitles him to attorneys' fees.  Dalal's request for attorneys' fees based on the language in the original engagement letter is therefore without merit.

Dalal also argues that he is entitled to attorneys' fees because EasyLink's lawsuit was "frivolous."  Under New York law,

17

"[t]he court, in its discretion, may award to any party or attorney in any civil action or proceeding before the court, except where prohibited by law, . . . reasonable attorney's fees, resulting from frivolous conduct." N.Y. Comp. Codes R. & Regs. tit. 22, § 130-1.1(a).[9]  Although EasyLink's affirmative claims against Dalal were dismissed in the December 2002 Opinion, the claims were not so lacking in merit that it should be punished for having made them.  Indeed, among EasyLink's affirmative claims was a request for declaratory judgment that it owed no commission to Dalal.  Although this claim has since been denied, EasyLink did obtain a declaratory judgment in its favor in the February 2003 Opinion, won on appeal in 2005, and again obtained a judgment in its favor in the April 2006 Judgment.  Furthermore, the bulk of attorneys' fees claimed by Dalal were incurred in pursuit of his counterclaims against EasyLink, not in connection with his defense of EasyLink's claims against him.  As such, this is not an appropriate case in

---

[9] "Frivolous conduct" is defined to include any action if:

> (1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law;
> (2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or (3) it asserts material factual statements that are false.

N.Y. Comp. Codes R. & Regs. tit. 22, § 130-1.1(c).

which to award attorneys' fees based on purported frivolous claims brought by the plaintiff.

5. Bill of Costs

Finally, Dalal requests that the Court "verify the Bill of Costs and enter damages in the amount of $21,071.93" in his favor. Dalal submitted his Bill of Costs to the Clerk of Court on August 1, 2009. Local Rule 54.1 provides that taxable costs may be requested 30 days after the entry of final judgment. Because no final judgment has yet been entered, Dalal's submission was premature. Pursuant to Local Rule 54.1, Dalal shall have 30 days after the entry of this final judgment to submit to the Clerk his request to tax costs.

## CONCLUSION

The Clerk of Court shall enter final judgment in favor of Sandeep Dalal in the amount of $937,500.00 plus prejudgment interest of $544,846.75, for a total award of $1,482,346.75.

SO ORDERED.

Dated: New York, New York
December 30, 2009

DENISE COTE
United States District Judge